IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| John L. Jackson, #227240, ) | |
| ) | Civil Action No. 6:08-599-TLW-WMC |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Willie L. Eagleton, Warden of ) | |
| Evans Correctional Institution, ) | |
| ) | |
| Respondent. ) | |
| ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## **BACKGROUND OF THE CASE**

The record reveals that the petitioner is currently confined in the Evans Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Clerk of Court for Spartanburg County. The Spartanburg County Grand Jury indicted the petitioner for first-degree sexual exploitation of a minor (94-GS-42-4204), possession of a stolen vehicle (94-GS-42-4205), and second-degree criminal sexual conduct with a minor (94-GS-42-4206). Attorney David C. Dodson represented the petitioner on the charges. On October 12, 1995, the petitioner proceeded to a jury trial and was found guilty of first-degree sexual exploitation of a minor and second-degree criminal sexual conduct with a minor. He was found not guilty of possession of a stolen vehicle.

The Honorable Gary E. Clary sentenced the petitioner to confinement for 20 years for second-degree criminal sexual conduct with a minor and 10 years consecutive for first-degree sexual exploitation of a minor (94-GS-42-4205). The petitioner did not appeal his convictions or sentences.

The petitioner subsequently filed an application for post-conviction relief on October 16, 1996 (96-CP-42-1910), in which he made numerous claims of ineffective assistance of counsel and various constitutional claims. The State made its return and motion to dismiss on December 3, 1996 asserting it was a late application under the state post-conviction relief ("PCR") statute of limitations. By written order dated February 9, 1998, the Honorable J. Derham Cole denied the motion to dismiss. The State made a supplemental return. Attorney Stephen S. Wilson represented the petitioner. By written Order dated March 13, 2000, Judge Cole dismissed the application without prejudice and granted the petitioner a belated direct appeal pursuant to *White v. State*, 263 S.C. 110, 208 S.E.2d 35 (1974), after the State conceded he was entitled to consideration of direct appeal issues in a PCR appeal under South Carolina procedure.

A timely notice of appeal was filed on the petitioner's behalf. Aileen P. Clare of the South Carolina Office of Appellate Defense submitted a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), under *White v. State*, and a petition for writ of certiorari. In the petition for writ of certiorari, the petitioner asserted:

> I.     Did Petitioner waive his right to PCR counsel?
>
> II.    Did the lower court properly accept the parties agreement that petitioner was entitled to a belated direct appeal?

In his briefing of direct appeal matters under SCACR Rule 227, the petitioner's appellate counsel made an initial *Anders* brief of appellant pursuant to *White v. State* and petition to be relieved as counsel dated September 15, 2000, asserting as the arguable ground:

> Was appellant's trial rendered unfair by the state's extensive reliance on inadmissible character evidence.

The State filed a return to petition for writ of certiorari. The petitioner also filed a *pro se* brief dated November 2, 2000. On July 24, 2002, the court dismissed the petition as to Question I but granted certiorari as to Question II and dismissed the direct appeal issues after a review pursuant to *Anders v. California*. The remittitur was issued August 9, 2002.

The petitioner subsequently filed a second post-conviction relief application on December 26, 2002 (2002-CP-42-4648). The State made its return. An evidentiary hearing was convened at the Spartanburg County Courthouse on May 28, 2004. The petitioner was present and represented by attorney Albert V. Smith. The respondent was represented by Donald J. Zelenka. The PCR application on December 26, 2002, alleged that the petitioner was being held in custody for the following reasons (verbatim):

> (1) "Violation of the inventory policy of Spartanburg Sheriff Dept,; S.C. Code fo Laws 17-13-40; 17-13-4-; S.C. Cont. Art I, Sec. 10; 1st, 4th 5th and 14th Amendment by police officers."
>
> (2) "Illegal search and seizure of 8 video tapes belonging to me in violation of the 4th and 14th Amed; S.C. Cont. Art I, Sec. 10, and S. C. Code of Laws 17-13-140."
>
> (3) "Chief Henderson was in violation of S. C. Code of laws 17-13-40 and 23-1-215(a)."
>
> (4) "Trial Judge errored by not suppressing video tape as fruit of the poisoness tree."
>
> (5) Ineffective assistance of trial counsel.
>
> (6) Ineffective assistance of appellate counsel.

At the beginning of the PCR evidentiary hearing, the State made a motion to dismiss claims one through four because they raised direct appeal issues not cognizable in PCR. The PCR court agreed. However, the petitioner was permitted to proceed with his claims of ineffective assistance of trial and appellate counsel. At the State's request, the record was left open to depose the petitioner's former trial counsel who was terminally ill and could not

3

travel. However, trial counsel passed away prior to the scheduled deposition. Both parties submitted briefs at the court's request. By written order dated December 19, 2005, the Honorable Roger L. Couch denied and dismissed the application with prejudice.

A timely notice of appeal was filed on the petitioner's behalf. The petitioner was represented on PCR appeal by his hearing counsel, Albert V. Smith. On October 4, 2006, counsel made a petition for writ of certiorari raising the following claims:

> I.    Did the Circuit Court err in holding that Petitioner's trial counsel was not ineffective in failing to object to the illegal search and seizure of videotapes; failing to make a motion to suppress, a motion to quash, or a request for an *in camera* hearing until after the start of the trial when the items had already been entered into evidence?
>
> II.   Did the Circuit Court err in holding that Petitioner's appellant [appellate] counsel was ineffective in failing to argue on appeal that the search and seizure was a fourth amendment violation?

The respondent, through Assistant Attorney General Molly R. Crum, made a return to the petition on March 30, 2007. On December 13, 2007, the South Carolina Supreme Court entered its letter order that the petition for writ of certiorari was denied. The remittitur was entered on December 31, 2007.

In his pro se petition now before this court, the petitioner makes the following allegations:

> (1)   Illegal search and seizure of 8 video tapes and [viewing] them after removing them from the protected of the inventory they had been [placed].
>
> > A.    Chief Henderson of the Inman Police department and Detective's Larry Mulkey and [Kevin] Bobo of the Spartanburg County Sheriff Department without a search warrant did remove a view 8 video tapes belonging to Petitioner John L. Jackson from the protected custody of Inventory they had been placed. By doing so they violated Petitioners rights under the 1st, 4th and 14th Amendment Rights under the United States Constitution and Art. I, §10 of the South Carolina

4

> Constitution, also S.C. Code of Laws 17-13-140 and 17-13-40.

(2)     Chief Henderson of the Inman Police Dept. was the first to view the video tapes that came out of inventory had no legal rights to them.

> A.     Inman is a municipality and South Carolina Code of Law §17-13-40 states in part, That a police of any city [or] town [may] arrest when in pursuit 3 miles of it's corporate limits. How ever, if a city police officer answers a call "outside" his Municipal Jurisdiction exclusive of such situation, the officer outside his jurisdiction would be "limited" to those of a "non-legal nature". Any actions beyond such could subject a Municipality to liability and, thus, should be avoided. 1986 Op. Att. Gen, No. 86-79, p. 248.

(3)     Ineffective Assistance of Trial Counsel. Appellate counsel Aileen Clare failed to argue 1st, 4th, amend. violation on direct appeal.

> A.     Trial counsel was ineffective for failing to make any pre-trial motions such as a Brady motion; failing to object to illegal search and seizure of video tapes [or] make a motion to suppress tapes until the second day of the trial after a full day of testimony about what was on the tapes before jury. Failing [to be] prepared to argue my standings to contest the search of the suppose [to be] stolen car, which I was found not guilty of. Appellate lawyer refused to argue objection of trial lawyers 4th [amendment] violation by police officer's.

(4)     Trial court was in error for not suppressing video tapes under the fruits of the poisonous tree doctrine, and denying petitioner standing to contest the search of the supposed [to be] stolen car.

> A.     After hearing a full days testimony about how the video was obtained illegally and viewed without a search warrant he was well aware that the video tapes was fruits of the poisonous tree, yet he let them be entered into evidence over objections from trial lawyer. Also the trial judge help the prosecution argue the standing and abandoning issues to contest the search for her. The trial judge said that because the car was stolen I did have any rights and because the car was abandoned. Yet the jury found me not guilty of the car.

5

On May 21, 2008, the respondent filed a motion for summary judgment. By order filed May 22, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his response to the motion on June 25, 2008.

## **APPLICABLE LAW**

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

6

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is de novo. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA de novo standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

## **ANALYSIS**

### *Grounds One and Four*

In ground one, the petitioner asserts that there was an illegal search and seizure of eight videotapes. The record reveals that the videotapes at issue were recovered from an automobile that was located on A.W. Fowler's property after he made a complaint that two cars were left on his property. One was a green 1994 Dodge Stealth (App. 65). It was determined that the Dodge had been stolen from Benson's Chrysler. An employee of Benson's assisted by bringing keys to get into the vehicle. Inside the vehicle were tapes that were retrieved and inventoried along with other items (App. 69-70). Inman Chief of Police Glen Henderson testified at trial that when the vehicle's hatchback was opened he observed in the vehicle a driver's license, a birth certificate (the petitioner's), court

7

documents, a .22 rifle, clothing, a camera, a VCR camera, videotapes, and other items (App. 85).  Henderson stated he took the tapes to the Police Department and played a few of the tapes, which revealed the petitioner having sexual intercourse with a young female (App. 86-87).  He identified the defendant and the victim in court as being on the tape (App. 88).

Detective Larry Mulkey of the Spartanburg County Sheriff's Department testified similarly about recovering the petitioner's driver's license, birth certificate, and videotapes in the Dodge Stealth (App. 97-98).  Mulkey stated he viewed the tapes with Henderson and saw the victim with the petitioner in three of the tapes (App. 98-100, 102).

On the next day of the trial, the petitioner's counsel made a motion to suppress the actual introduction of the tapes and to strike prior testimony about what was on the tapes (App. 111-16).  He asserted that law enforcement had a right to remove the items from the stolen vehicle and conduct an inventory of the items and to lock them in a secure place (App. 112).  However, he argued that the actual viewing of the tapes was in violation of the petitioner's rights because there were no exigent circumstances and no showing that a warrant had been or could be produced because there was no probable cause to believe the tape was stolen.  He asserted that this was a violation of the petitioner's state and federal constitutional rights (App. 115-16). The prosecution asserted that the petitioner did not have standing to contest the search because it was a stolen vehicle and that access was gained into the vehicle by the owner (App. 117).  The trial judge denied the motion.  He concluded that the finding of the tapes in a stolen and abandoned vehicle removed that matter from any Fourth Amendment rights (App. 120-21).  He further concluded the tapes were relevant evidence.

The issue raised by the petitioner in the *Anders* brief in the *White v. State* appeal concerned only the effect of the admission of tapes as inadmissible character evidence, not the Fourth Amendment issue raised herein (Supp. App. 90-95).  In *State v.*

*McKennedy*, 559 S.E.2d 850 (S.C. 2002), the South Carolina Supreme Court held that claims actually presented in an *Anders* brief were presented on the merits for purposes of federal habeas review. *Id.* at 854-55. Since this claim was not presented in the *Anders* brief, the respondent submits that it is barred as a free-standing claim. This court agrees.

This claim was raised as issue 10(b) in the second PCR application (App. 381). In the PCR action, the PCR court denied the direct appeal claims, including issue 10(b). In particular, the PCR court held:

> At the beginning of the PCR evidentiary hearing, the Respondent moved to dismiss claims one through four in the application arguing they raised direct appeal issues not cognizable in PCR. This Court agrees that the Applicant is attempting to raise issues of appeal, which are not proper in a PCR hearing. Specifically, this Court finds that these allegations raise direct appeal issues that are procedurally barred by S.C. Code Ann. § 17-27-20(b) (1985). PCR is not a substitute for an appeal. *Simmons v. State*, 264 S.C. 417, 215 S.E.2d 883 (1974). Moreover, a PCR application cannot assert any issues that could have been raised **at trial** or **on appeal**. *Drayton v. Evatt*, 312 S.C. 4, 430 S.E.2d 517 (1993). This Court finds that the Applicant either raised or could have raised these issues on appeal. The failure to do so has waived these claims as grounds for relief. Therefore, this Court summarily dismisses claims one through four.

(App. 507) (emphasis in original). The petitioner did not appeal this claim.

If a petitioner before a federal district court fails to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in state courts. In such a case, a federal district court is barred from considering the habeas claim absent a showing of cause and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice, as the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907, 916 (4th Cir. 1997) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). A petitioner may establish a fundamental miscarriage of justice by showing that a constitutional error probably resulted in the conviction of one who is

actually innocent. In order to raise a claim of actual innocence, a prisoner "must present evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). The petitioner in this case has made no such showing. Based upon the foregoing, this ground is procedurally barred.

Furthermore, as argued by the respondent, this ground is barred under *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, Powell, like the petitioner in this case, argued that evidence used in his trial was the product of an illegal search. The Supreme Court held that federal courts could not, on a state prisoner's petition for a writ of habeas corpus, consider a claim that evidence obtained in violation of the Fourth Amendment should have been excluded at his trial, when the prisoner has had an opportunity for full and fair litigation of that claim in the state courts. *Id.* at 494-95. *See also Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (finding the *Stone v. Powell* doctrine applicable where the defendant "argued that evidence used in his trial was the product of an illegal arrest"); *Dortch v. O'Leary*, 863 F.2d 1337, 1342 (7th Cir.1988) (refusing to reverse state court's Fourth Amendment rulings concerning evidence that was derived from an allegedly illegal arrest because "it is precisely this type of consideration [that] *Stone v. Powell* precludes.") (citation and quotation marks omitted); *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 42 (3rd Cir.1984) (holding that "consideration of a claim that evidence admitted at trial was the fruit of an illegal arrest could not be considered on a habeas corpus petition so long as the state courts had afforded a full and fair opportunity to litigate that claim"). Here, the petitioner was given a full and fair chance to litigate the present issue in state court, and therefore federal habeas review is not available. Based upon the foregoing, ground one should be dismissed.

In ground four, the petitioner alleges the trial court erred in not suppressing the videotapes under the fruits of the poisonous tree doctrine. This claim was not raised

at trial, and when it was raised as issue 10(d) in the second post-conviction relief application (App. 381), it was denied on the same procedural grounds as the allegation in ground one (App. 507). For all the same reasons as set forth above with regard to ground one, ground four fails.

### *Ground Two*

In ground two, the petitioner asserts that Inman Police Chief Henderson was beyond his jurisdiction in reviewing the videotapes as a matter of state law, citing South Carolina Code Section 17-13-40. Apparently, this ground is based upon the petitioner's assertion that the place where the stolen property was located was just outside the Inman town limits (App. 65). As argued by the respondent, federal habeas is unavailable to retry state issues. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1989). Based upon the foregoing, this ground fails.

### *Ground Three*

In ground three, the petitioner alleges ineffective assistance of counsel. In his first specification, he complains that counsel failed to file motions, particularly a *Brady* motion. This issue was rejected in state court because the petitioner's first attorney did file a motion that the State remained required to respond to under *Brady*. In particular, the state PCR court held:

> The Applicant's claim that Mr. Dodson, his former trial attorney, was ineffective for failing to make a *Brady* motion for discovery himself is without merit. The Clerk of Court records reflect that such a motion was made previously by Charles Sanders, Esquire, the Applicant's first attorney. This Court finds that the record reflects that Mr. Dodson had access to this information and was prepared for trial. Thus, the Applicant failed to prove that trial counsel's representation fell below the standard of

11

> professional reasonableness for a criminal defense attorney in this regard. *See Strickland v. Washington, supra*; *Cherry v. State, supra*. Moreover, this Court finds that the Applicant also failed to show that the outcome of the trial would have been different if Mr. Dodson had also filed a *Brady* motion. *See Johnson v. State*. Specifically, there was overwhelming evidence of the Applicant's guilt because the videotapes depicted him engaging in sexual activity with the minor victim. *Ford v. State*, 314 S.C. 245, 442 S.E.2d 604 (1994)(finding that trial counsel's deficient representation is not prejudicial where there is overwhelming evidence of guilt); *See also, Humbert v. State*, 345 S.C. 332, 548 S.E.2d 862 (2001). Therefore, the Applicant also failed to prove prejudice, and this claim of ineffective assistance of trial counsel is denied and dismissed with prejudice.

(App. 507-509).

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697. Review of counsel's performance is "highly deferential." *Id.* at 689.

The PCR court's findings carry a presumption of correctness. Factual findings are entitled to deference, which the petitioner may overcome only by showing "'clear and convincing evidence to the contrary.'" *Wilson v. Ozmint,* 352 F.3d 847, 858 (4th Cir. 2003)

(quoting *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003) (internal citations omitted)).  The petitioner has not presented any probative evidence that shows the PCR court unreasonably applied federal law or that the PCR court made an unreasonable determination of the facts in light of the facts before it.  Accordingly, this ground fails.

In his remaining specifications, the petitioner asserts that his trial counsel was ineffective in the manner he challenged the admission of the tapes.  The petitioner's allegation that trial counsel was ineffective merely because he did not make pre-trial motions regarding the admissibility of the videotape, which depicted the 47-year-old petitioner engaging in sexual activity with the 13-year-old victim, is without merit as the petitioner failed to prove both deficiency and prejudice.  The trial transcript reflects that trial counsel objected and moved to suppress the videotape on Fourth Amendment grounds outside the presence of the jury, arguing both that the police failed to obtain a search warrant for the initial seizure as well as for viewing the videotape.  After the trial court denied the petitioner's motion to suppress, the videotape was entered into evidence (App. 111-23).  Thus, as argued by the respondent, the timing of trial counsel's objection was proper.  Accordingly, the PCR court properly concluded that the petitioner failed to prove that trial counsel's representation fell below the standard of professional reasonableness required of a criminal defense attorney in this regard (App. 509-11).

Further, the PCR court properly concluded that the petitioner failed to prove Sixth Amendment prejudice because the videotape was found in a car that was both stolen and abandoned (App. 511-13).

> "Generally, a warrantless search is per se unreasonable and thus violative of the Fourth Amendment's prohibition against unreasonable searches and seizures." *State v. Bultron*, 457 S.E.2d 616, 621 (S.C. Ct.App.1995). "However, a warrantless search will withstand constitutional scrutiny where the search falls within one of a few specifically established and well delineated exceptions to the Fourth Amendment exclusionary rule." *Id*. at 621. These exceptions include: (1) search incident

13

> to a lawful arrest; (2) "hot pursuit;" (3) stop and frisk; (4) automobile exception; (5) "plain view" doctrine; (6) consent; and (7) abandonment. *State v. Dupree*, 462 S.E.2d 279, 281 (S.C. 1995), *cert. denied*, 516 U.S. 1131 (1996).

*State v. Weaver*, 602 S.E.2d 786, 790 (S.C. Ct. App. 2004) (parallel citations omitted).

The petitioner had no standing to challenge the search and seizure of the video tape because he had no reasonable expectation of privacy in the stolen vehicle. *United States v. Wellons*, 32 F.3d 117, 119 (4th Cir. 1994) (finding that a defendant, as an unauthorized driver of a rental car, had no legitimate privacy interest in the car and, therefore, the search did not violate his Fourth Amendment rights); *United States v. Hargrove*, 647 F.2d 411, 412 (4th Cir. 1981) (finding that a defendant driving a stolen car did not have a legitimate expectation of privacy in the car and lacked standing to challenge the search of a bag in the car and the seizure of cocaine it contained). *See also United States v. Tropiano*, 50 F.3d 157, 161-62 (2nd Cir. 1995) (finding that it is obvious that a defendant who knowingly possesses a stolen car has no legitimate expectation of privacy in the car and does not have standing to challenge the search of the vehicle). During the trial, testimony was presented that the vehicle had been stolen from a dealership (App. 66-67; 79-80).

Further, the petitioner had no reasonable expectation of privacy since the vehicle had also clearly been abandoned. *State v. Lemacks*, 268 S.E.2d 285, 286 (S.C. 1980) (finding no Fourth Amendment protections applied where a defendant had abandoned the vehicle). The record reflects that the petitioner had abandoned the car on the privately-owned property of another person, and that property owner contacted police (App.64, 269). Therefore, the search of the car was reasonable and did not violate the Fourth Amendment, and the videotape was admissible.

Furthermore, as argued by the respondent, the petitioner's mere assertion that he had no initial standing but somehow acquired it later once the videotape was in police

14

custody is without merit. The petitioner offered no probative evidence that the chain of custody was improper. The trial court also properly concluded that police handling of the inventory was reasonable based on the totality of the circumstances (App. 118-21). If there is probable cause to search a vehicle at the time it is seized, this rationale does not disappear merely because the vehicle is taken into police custody. *State v. Weaver*, 602 S.E.2d 786, 791 (S.C. Ct. App. 2004). Further, any subsequent search is part of an ongoing criminal investigation, and a warrant is not required. *Id.* Since the videotape was clearly admissible, the PCR court correctly found that the petitioner failed to show that the outcome of his trial would have been different but for trial counsel's alleged deficient representation (App. 515). Furthermore, the videotape was cumulative to the victim's own testimony and statement and to the petitioner's own admission about the existence of the sexual battery (App. 137-41, 273; Supp. App. 226-30). Base upon the foregoing, this specification fails.

The petitioner next argues that his appellate counsel was ineffective for failing to argue on appeal that the search and seizure allegedly violated the Fourth Amendment. A defendant is constitutionally entitled to the effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). Where ineffective assistance of appellate counsel is alleged, the PCR applicant must show: (1) that appellate counsel's performance was deficient; and (2) that he was prejudiced by appellate counsel's deficiency. *Southerland v. State,* 524 S.E.2d 833, 836 (S.C. 1999). To be effective, appellate counsel must give assistance of such quality as to make appellate proceedings fair. *Id.* Appellate counsel must provide effective assistance but need not raise every non-frivolous issue presented by the record. *Id.*

The PCR court found that the petitioner presented no probative evidence at the PCR evidentiary hearing of how appellate counsel was ineffective (App. 515). Moreover, the court noted that appellate counsel filed a brief pursuant to *Anders v.*

*California*, 386 U.S. 738 (1967) (App. 515; Supp. App. 87-98). As noted by the PCR court, the *Anders* procedure necessarily requires the appellate court to review and pass upon the merit of each preserved issue relating to trial court error during the trial. In other words, *Anders* requires the appellate court to do an independent evaluation of the trial record to determine if there are any meritorious issues for appeal. If the appellate court believes there are issues that require additional briefing, it orders counsel for the parties to do so. In the petitioner's case, appellate counsel and the court applied the *Anders* procedure, and the case was dismissed (Supp. App.117-18).

The PCR court properly concluded that the petitioner failed to carry his burden to show that appellate counsel's representation fell below the standard of professional reasonableness for failing to argue this issue on appeal, and the PCR court also correctly found that petitioner failed to show any prejudice because a higher court had already reviewed the entire record and determined that there were no meritorious issues (App. 515-17). Further, the South Carolina Supreme Court considered the petitioner's *pro se* brief along with appellate counsel's *Anders* brief (Supp. App. 117-18). Accordingly, the petitioner failed to show prejudice, and this claim fails.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 12) be granted.

s/William M. Catoe<br>
United States Magistrate Judge

February 2, 2009

Greenville, South Carolina